Adrian FREEMAN, et al.,
Plaintiffs–Appellees,

v.

LAVENTHOL & HORWATH, et al.,
Defendants–Appellants.

No. 89–6259.

United States Court of Appeals,
Sixth Circuit.

Argued July 31, 1990.

Decided Sept. 17, 1990.

Harvey L. Pitt, (argued) Washington, D.C. (Marc P. Cherno, Irwin Blum, Don Catinello, and Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C.; David S. Cupps, Sandra J. Anderson, Daniel J. Buckley, and Vorys, Sater, Seymour & Pease, Columbus, Ohio; Barry S. Augenbraun, James S. Gkonos, and Laventhol & Horwath, Philadelphia, Pa., on the brief), for appellants Laventhol & Horwath.

Harvey L. Pitt, (argued) Washington, D.C. (Jerre B. Swann, Thomas H. Christopher, and Kilpatrick & Cody, Atlanta, Ga., on the brief), for appellants Aaron Rose, et al.

J. Michael Rediker, (argued) Orlando, Fla. (Richard H. Adams, Jr., Richard D. Connor, Jr., Christopher T. Vernon, and Smathers, Pleus & Adams, Orlando, Fla., on the brief), for appellees.

Gregory G. Little, and Hunton & Williams, Knoxville, Tenn., Robert Dean Pope, James W. Featherstone, III, and Hunton & Williams, Richmond, Va., filed a brief, for amicus curiae National Ass'n of Bond Lawyers.

Louis A. Craco, Deborah E. Cooper, and Willkie Farr & Gallagher, New York City, William T. Garcia, and Willkie Farr & Gallagher, Washington, D.C., filed a brief, for amicus curiae American Institute of Certified Public Accountants.

Before: MILBURN, GUY and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

This is an interlocutory appeal from an order entered April 13, 1989, in the Eastern District of Kentucky, William O. Bertelsman, District Judge, denying appellants' motion for partial summary judgment, or, in the alternative, to dismiss appellees' claims of fraud on the new issue market.

This class action arises from the sale of tax-exempt municipal bonds to finance the construction of a retirement center. The complaint alleges violations of various state and federal securities laws. Our con-

cern, on this appeal, is limited to appellees' allegations of securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b) (1988), and Rule 10b–5 promulgated thereunder. 17 C.F.R. 240.10b–5 (1990). Appellees plead the fraud on the market theory to satisfy the reliance element of their 10b–5 action. We adopted that theory in *Levinson v. Basic, Inc.*, 786 F.2d 741 (6th Cir.1986), *vacated on other grounds,* 485 U.S. 224 (1988) (hereinafter *Levinson* ).

Appellants moved for partial summary judgment, or, in the alternative, for dismissal, contending (1) that the presumption raised by the fraud on the market theory does not arise in a case involving the issuance of municipal bonds in a primary market; and (2) that appellees' claims were barred by the statute of limitations. The district court denied the motion and on May 18, 1989 certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988). On October 3, 1989, we granted permission to appeal pursuant to the same statute on the limited legal issue of whether a presumption of reliance based on the fraud on the market theory arises in a case involving a new issue of municipal bonds in a primary market.

On appeal, appellants contend that (1) the fraud on the market theory does not raise a presumption of reliance in a case involving newly issued tax-exempt municipal bonds in a primary market; (2) we should not recognize a presumption of reliance based on the fraud created the market theory; and (3) even if we were inclined to recognize such a presumption, appellees' claims are insufficient under that theory.

For the reasons that follow, we reverse and remand.

### I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues on appeal.

---

* The Honorable William H. Timbers of the United States Court of Appeals for the Second Circuit, sitting by designation.

Appellees are investors in the North River Retirement Center, Inc. (hereinafter North River). Appellants comprise the participants in the bond issue: the directors, feasibility consultants, project manager, project coordinator, marketing agent, and indenture trustee of North River, as well as various underwriters, broker-dealers, accountants, and attorneys.

North River was intended to be a three story retirement community consisting of 175 separate residential units. It was financed through the sale of $18,230,000 of tax-exempt municipal bonds, issued by the City of Florence, Kentucky. They were sold pursuant to an Official Statement dated June 30, 1983. The bonds were sold to more than 1,500 investors in denominations of $5,000. The bond issue was divided into short term bonds totalling $10,500,000 with an interest rate of 10.5%, and long term bonds totalling $7,730,000 with an interest rate of 13.0%. They were secured by a first mortgage on the real and personal property of the project, together with its initial occupancy fees and revenues.

North River used the proceeds from the sale of the bonds to acquire, construct and equip the project, to pay interest on the bonds for the first 28 months after their delivery, to fund a debt service reserve of $1,000,000, to fund development and marketing expenses, and to fund the issuance of the bonds. The project was completed essentially on time and within the budget.

In July 1985, the indenture trustee, Bank South, N.A., declared the project to be in default. Only 7 of the 175 units had been sold. North River failed to make the December 31, 1985 first scheduled interest payment to bondholders. On December 31, 1986, it filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1988). The project was sold for $6,025,000 during the bankruptcy proceedings. *In re North River Retirement Center, Inc.*, No. 2–86–00989, slip op. at 5 (Bankr.E.D.Ky. April 4, 1987). Pursuant to a reorganization plan that was confirmed by the bankruptcy court, the bondholders will receive approximately $10,000,000 of their $18,230,000 invest-

ment. *Id.* at 4. North River currently is being operated as a retirement center under new ownership and management. It is not fully occupied.

Appellees commenced this class action on behalf of all purchasers of North River bonds on December 30, 1987. Appellees allege violations of various state and federal securities laws. On this appeal, we need only consider appellees' claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b) (1988), and Rule 10b–5 promulgated thereunder. 17 C.F.R. 240.10b–5 (1990).

Specifically, the complaint alleges that the Official Statement misrepresented or failed to disclose that (1) the feasibility consultant knew that the market could not support the project; (2) appellants knew that the lack of on site nursing care would result in the failure of North River; (3) prospective residents could not afford the fees, which were based on retiring the bond issue, not on what the market would bear; and (4) the marketing agent, financial consultant and feasibility consultant failed to disclose their association with another failed retirement center. The complaint alleges that, as a result of these misstatements and omissions, "the true value of the Bonds [was] substantially less than the price paid for them by Plaintiffs and the Class such that the Bonds would not have been marketed had accurate and complete information been fully disclosed in the Official Statement."

At least one of the named plaintiffs did not read the Official Statement before purchasing the bonds. The complaint, therefore, seeks to invoke a presumption of reliance by alleging a fraud on the market. It states: "Plaintiffs and the Class acted in justifiable reliance upon the integrity of the marketplace, in the absence of fraud in procuring the issuance of the Bonds, and the complete disclosure of all material facts by all of these Defendants in the issuance and sale of the Bonds."

On October 6, 1988, appellants filed a joint motion for partial summary judgment, or, in the alternative, for dismissal, as to plaintiffs' claims of fraud on the new issue

market. This motion was denied by the district court on April 13, 1989. The court found that the factual allegations "if true, would entitle the plaintiffs to a presumption of reliance based upon the fraud on the market theory as outlined by the Sixth Circuit in *Levinson*."

On May 18, 1989 the district court certified its April 13 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988). The court found that "[t]he issue regarding 'fraud on the market' can ... be regarded as an issue of law on which there might be substantial disagreement...." We granted permission to appeal, by order dated October 3, 1989, *"only* as to the fraud on the market theory."

This appeal followed.

## II.

The district court treated appellants' motion as one for summary judgment. Summary judgment is proper when the evidence establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We consider the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

We review the district court's denial of summary judgment under an abuse of discretion standard. *Pinney Dock & Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 109 S.Ct. 196 (1988).

> "The trial court may ... exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain that there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried; and in certain other situations."

6 Moore, Taggart, & Wicker, *Moore's Federal Practice* ¶ 56.15[8] (2d ed. 1988).

## III.

### A.

We turn first to appellants' contention that our holding in *Levinson* cannot be extended to securities traded in markets that are not efficient. We agree.

 Reliance is an essential element of a Rule 10b–5 claim that must be pleaded and proved by plaintiffs. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243 (1988) (hereinafter *Basic* ). The reliance requirement ensures that there is a causal connection between the defendant's fraud and the plaintiff's injury. *Id.* Under certain circumstances, plaintiffs can satisfy this element by raising a rebuttable presumption of reliance. *See, e.g., id.* at 245–47 (presumption of reliance arises in cases in which there has been a fraud on the market); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54 (1972) (presumption of reliance arises in cases involving material omissions).

 One of the circumstances justifying a presumption of reliance arises when a plaintiff alleges that a defendant made material misrepresentations or omissions concerning a security that is actively traded on an efficient market, thereby establishing a fraud on the market. *Basic, supra,* 485 U.S. at 247. The fraud on the market theory rests on the assumption that the price of an actively traded security in an open, well-developed, and efficient market reflects all the available information about the value of a company. *Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986). Misrepresentations, therefore, affect the price of the security. Investors rely on the price of the security as an accurate reflection of its worth. They, therefore, rely indirectly on such misrepresentations, even if they do not rely on them directly. *Id.* at 1161; *Levinson, supra,* 786 F.2d at 750; *Blackie v. Barrack,* 524 F.2d 891, 907 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976).

In *Levinson* we adopted the fraud on the market theory and recognized a rebuttable presumption of reliance arising therefrom. We held that there were five elements a plaintiff was required to allege and prove

to invoke the fraud on the market presumption of reliance:

"(1) that the defendants made public misrepresentations, (2) that the misrepresentations were material, (3) that the stock was traded on an efficient market, (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the stock, and (5) that the plaintiff traded in the stock between the time the misrepresentations were made and the time the truth was revealed."

786 F.2d at 750 (citations omitted). This formulation of the theory was approved by the Supreme Court in *Basic, supra,* 485 U.S. at 248 n. 27.

■ The district court here found that "[p]laintiffs have alleged facts sufficient to satisfy the requirements of the fraud on the market theory announced by the Sixth Circuit in *Levinson.*" We disagree. The district court failed to give proper consideration to the efficient market element. We therefore hold that its decision was inconsistent with our holding in *Levinson.*

■ We are mindful that the securities acts were not intended "to establish a scheme of investors' insurance." *List v. Fashion Park, Inc.,* 340 F.2d 457, 463 (2d Cir.), *cert. denied,* 382 U.S. 811 (1965). With that in mind, we "will presume reliance only when it is logical to do so." *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1263 (S.D.N.Y.1984). The fraud on the market theory cannot be applied logically to securities that are not traded in efficient markets. An inefficient market, by definition, does not incorporate into its price all the available information about the value of a security. *Lipton v. Documation, Inc.,* 734 F.2d 740, 746 (11th Cir.1984), *cert. denied,* 469 U.S. 1132 (1985); *Reingold, supra,* 599 F.Supp. at 1264. Investors, therefore, cannot be presumed to rely reasonably on the integrity of the market price of a security that is traded in such a market. *Stinson v. Van Valley Dev. Corp.,* 714 F.Supp. 132, 136 (E.D.Pa.1989), *aff'd,* 897 F.2d 524 (3d Cir. 1990) (hereinafter *Stinson I* ). The rationale supporting the fraud on the market

presumption of reliance does not apply when securities are not traded in an efficient market. *Id.* For that reason, our opinion in *Levinson* distinguished cases that "do not involve ... an impersonal exchange in the open market." *Levinson, supra,* 786 F.2d at 751; *see also Platsis v. E.F. Hutton & Co., Inc.,* 642 F.Supp. 1277, 1301 (W.D.Mich.1986) (since market for investments in oil and gas shelter limited partnerships is not an open market, it "is not the type of market encompassed by the fraud on the market theory"), *aff'd,* 829 F.2d 13 (6th Cir.1987), *cert. denied,* 485 U.S. 962 (1988). In short, the presumption of reliance arising from the fraud on the market theory is only "supported by common sense and probability," *Basic, supra,* 485 U.S. at 246, as applied to efficient markets.

We adhere to our holding in *Levinson* that the presumption of reliance we recognized in that case arises only when there has been a fraud on an efficient market.

## B.

■ We turn next to the question of whether a primary market for newly issued tax-exempt municipal bonds is an efficient market. It follows from our preceding analysis that the fraud on the market theory does not raise a presumption of reliance in the instant case if a primary market for newly issued tax-exempt municipal bonds is not efficient. We agree with appellants' contention, as a matter of law, it is not.

■ We did not have occasion explicitly to define the qualities that characterize an efficient market in *Levinson,* since that was not at issue in that case. We observe the following general definitions:

"—An open market is one in which anyone, or at least a large number of persons, can buy or sell.

—A developed market is one which has a relatively high level of activity and frequency, and for which trading information (e.g., price and volume) is widely available. It is principally a secondary market in outstanding securities. It

usually, but not necessarily, has continuity and liquidity (the ability to absorb a reasonable amount of trading with relatively small price changes).

—An efficient market is one which rapidly reflects new information in price. These terms are cumulative in the sense that a developed market will almost always be an open one. And an efficient market will almost invariably be a developed one."

*Cammer v. Bloom,* 711 F.Supp. 1264, 1276 n. 17 (D.N.J.1989) (quoting 4 Bromberg & Lowenfels, Securities Fraud and Commodities Fraud § 8.6 (Aug.1988)). The court in *Cammer* identified five factors that would be useful in proving that a security was traded in an efficient market, justifying the application of the fraud on the market theory: (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S–3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. *Cammer, supra,* 711 F.Supp. at 1286–87.

Considering these criteria, it appears that securities traded in national secondary markets such as the New York Stock Exchange, as was the case in *Levinson,* are well suited for application of the fraud on the market theory. The high level of trading activity ensures that information from many sources is disseminated into the marketplace and consequently is reflected in the market price. This is the premise upon which the fraud on the market theory rests.

By contrast, a primary market for newly issued municipal bonds "is not efficient or developed under any definition of these terms." *In re Bexar County Health Facility Dev. Corp. Sec. Litig.,* 130 F.R.D. 602, 607 (E.D.Pa.1990). The North River bonds, for example, were not traded actively in an impersonal market. This decreases the probability that their price could be relied on reasonably as an accurate reflection of their true value. In fact, the price of newly issued securities is set primarily by the underwriter and the offeror, not by the market. *Lipton, supra,* 734 F.2d at 746; *Bexar, supra,* 130 F.R.D. at 607. We agree with those courts that have held that a primary market for newly issued bonds is not efficient. *Bexar, supra,* 130 F.R.D. at 607; *Stinson I, supra,* 714 F.Supp. at 137.

We hold in the instant case that a primary market for newly issued municipal bonds as a matter of law is not efficient. Appellants were entitled to judgment as a matter of law on appellees' 10b–5 claim to the extent it is based on the fraud on the market theory. We conclude that the district court abused its discretion in denying appellants' motion for partial summary judgment on appellees' claims of fraud on the new issue market because it is certain that appellees cannot satisfy the elements of the fraud on the market theory as set forth in *Levinson.*

We hold that the fraud on the market theory as articulated by us in *Levinson* does not apply to cases involving fraud on a primary market for newly issued tax-exempt municipal bonds.

### IV.

Appellants invite us to reject a presumption of reliance based on a "fraud created the market" theory. In the alternative, if we are inclined to recognize such a presumption, appellants invite us to hold that appellees' claims are insufficient to invoke that presumption. We decline that invitation because it is not necessary to the determination of the issue on this appeal. We proceed only to explain our reasoning.

Some courts have recognized a presumption of reliance in cases involving newly issued securities. *See, e.g., Ross v. Bank South, N.A.,* 885 F.2d 723, 729 (11th Cir. 1989) (en banc), *cert. denied,* 110 S.Ct. 1924 (1990), *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1121 (5th Cir.1988), *vacated on other grounds,* 109 S.Ct. 3236 (1989); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.,* 717 F.2d 1330, 1333 (10th Cir.1983), *cert. denied,* 465 U.S. 1026 (1984); *Shores v. Sklar,* 647 F.2d 462, 470 (5th Cir.1981) (en banc), *cert. denied,* 459

U.S. 1102 (1983); *Bexar, supra,* 130 F.R.D. at 610; *Stinson v. Van Valley Dev. Corp.,* 719 F.Supp. 362, 366 (E.D.Pa.1989) (hereinafter *Stinson II* ). The presumption of reliance recognized in these cases rests on a theory, known as the fraud created the market theory. Under that theory, investors are not presumed to rely on the integrity of the market price, rather they are presumed to rely on the integrity of the market itself, i.e., that securities offered on the market are genuine. *Ross, supra,* 885 F.2d at 729; *Shores, supra,* 647 F.2d at 470–71. The causal connection between the defendant's fraud and the plaintiff's injury is not established by alleging and proving that the fraud affected the market price; rather, the causal connection is established by alleging and proving that the securities could not have been marketed at any price absent fraud. *Ross, supra,* 885 F.2d at 731; *Shores, supra,* 647 F.2d at 469–71; *see also Abell, supra,* 858 F.2d at 1122 (enterprise itself was patently worthless); *T.J. Raney, supra,* 717 F.2d at 1333 (bonds not validly issued under applicable state law); *Bexar, supra,* 130 F.R.D. at 610 (enterprise itself was patently worthless); *Stinson II, supra,* 719 F.Supp. at 366 (same).

We express no opinion on the sufficiency of appellees' claims under a fraud created the market theory. The fraud created the market theory is separate and distinct from the fraud on the market theory, and is supported by an entirely different rationale. *See, e.g., Bexar, supra,* 130 F.R.D. at 607 ("[t]he 'fraud created the market' doctrine relies on neither of the[ ] economic principles [underlying the fraud on the market doctrine] to support a rebuttable presumption of reliance in the new issues market").

The fraud created the market issue is not before us at this time. The district court explicitly based its ruling on our decision in *Levinson.* The mandate given us by the order of a prior panel of this court, granting permission to appeal, limits our review to application of the fraud on the market theory to a new issue of tax-exempt municipal bonds in a primary market. As in an earlier case in this Court "[t]his appeal is limited to the specific question certified by the district court and for which leave to appeal was granted by our court under 28 U.S.C. § 1292(b)." *Herron v. Keene Corp.,* 751 F.2d 873, 874 (6th Cir.1985) (per curiam).

### V.

To summarize:

We hold that the fraud on the market theory as articulated by us in *Levinson* does not give rise to a presumption of reliance in a case involving a new issue of tax-exempt municipal bonds in a primary market. We further hold that appellants were entitled to judgment as a matter of law on this issue. Failure to grant summary judgment on this issue was an abuse of discretion. In reaching our decision, we find it neither necessary nor appropriate to consider the sufficiency of appellees' claims under a fraud created the market theory.

The order of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I have absolutely no quarrel with the court's conclusion that a "fraud on the market" theory is not applicable to this case. However, I think the parties have asked, and the district judge has certified, a different question for resolution. I believe the question before us is whether this circuit will recognize a "fraud created the market" theory. I would join with the courts that have recognized such a theory [1] and remand this case for further proceedings so that the necessary facts can be

---

1. *See, e.g., Ross v. Bank South, N.A.,* 885 F.2d 723 (11th Cir.1989) (*en banc*); *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330 (10th Cir.1983); *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984); *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (*en banc* ); *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Stinson v. Van Valley Dev. Corp.,* 719 F.Supp. 362 (E.D.Pa.1989), *aff'd,* 897 F.2d 524 (3d Cir. 1990) (table).

developed to determine whether a "fraud created the market" theory would be applicable here.