In re FEDERAL–MOGUL CORP.
SECURITIES LITIGATION.

No. Civ. 00–40222.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 20, 2001.

Peter A. Binkow, Lionel Z. Glancy, Los Angeles, CA, E. Powell Miller, David J. Shea, Mantese, Miller, Troy, MI, for plaintiffs.

Andrew J. McGuinness, Bradley L. Smith, Dykema Gossett, Ann Arbor, MI, Steven A. Miller, Lowell E. Sahcnoff, Sachnoff & Weaver, Jonathan S. Polish, Chicago, IL, for defendants.

Gerard V. Mantese, E. Powell Miller, Marc L. Newman, Mantese, Miller, Troy, MI, for movants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GADOLA, District Judge.

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [docket entry 25]. On August 29, 2001, this Court heard oral argument on Defendants' motion, and all parties were given the opportunity to present arguments in support of, or in opposition to, that motion. For reasons set forth below, the Court grants Defendants' motion and dismisses this civil action.

### I BACKGROUND

At oral argument, the parties agreed with the following summary of the factual and procedural background of this civil action.

The Lead Plaintiffs are Fred G. Hillger, Sarita Maniktala, Arthur H. Stein, Dynamic Mutual Funds Limited, and Kevin O'Brien on behalf of Northwest Airlines (together, "Lead Plaintiffs"). (Am. Compl.¶ 11.) The Lead Plaintiffs purchased shares of Federal–Mogul Corporation ("Federal–Mogul") common stock during the period from October 22, 1998 through May 25, 2000 (the "Class Period"). (Id. ¶¶ 1, 11.)

Defendants are Federal–Mogul, Richard A. Snell, and Tom Ryan. (Id. ¶¶ 12–14.) Defendant Federal–Mogul manufactures a variety of automotive parts, including engine bearings, pistons, fuel systems, and lighting, ignition, and brake products. (Id. ¶ 2.) During the Class Period, Defendant Snell was the Chairman of the Board, Chief Executive Officer, President, and a Director of Federal–Mogul (id. ¶ 13); Defendant Ryan was Executive Vice President and Chief Financial Officer of Federal–Mogul (id. ¶ 14). Defendants Snell and Ryan are considered the "Individual Defendants."

Plaintiffs allege that Defendant Federal–Mogul, under Defendant Snell's supervision, attempted to restructure its operations toward manufacturing and to grow by acquiring complementary companies. (Am.Compl.¶¶ 3, 4.) In particular, in 1998, Defendant Federal–Mogul acquired Fel-Pro, Inc., T & N plc, and Cooper Automotive, Inc. (Id. ¶¶ 28–30.) As a result, Defendant Federal–Mogul issued considerable amounts of equity and debt. (Id. ¶ 31.)

According to Plaintiffs, after these acquisitions, Federal–Mogul represented that it would integrate the businesses, extract whatever synergies could be had, and eliminate duplicative functions. (Am. Compl.¶ 3.) Plaintiffs contend that, in spite of Federal–Mogul's representations, the company was not obtaining any synergies from the acquisitions but was sinking deeper in debt. In short, so Plaintiffs contend, "[t]his case concerns the dissemination of a series of materially false and misleading statements regarding [Federal–Mogul's] integration activities and the purported benefits derived therefrom, [Federal–Mogul's] earnings statements and the success of [Federal–Mogul's] acquisition strategy." (Id.)

The original Complaint in this civil action was filed on June 9, 2000. On August 29, 2000, this Court entered an order consolidating several cases and changing the title of this civil action to "In re Federal–Mogul Corp. Securities Litigation." On November 14, 2000, Plaintiffs filed their Consolidated Class Action Amended Complaint ("Amended Complaint"), in which they assert two claims for relief: that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder (Count I), and that the Individual Defendants violated Section 20(a) of the Securities Exchange Act (Count II).

On February 27, 2001, Defendants filed their Motion to Dismiss presently pending before the Court. That motion originally was scheduled to be heard on June 20, 2001. On May 31, 2001, however, the United States Court of Appeals for the Sixth Circuit issued its en banc opinion in *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir.2001), which set forth the Sixth Circuit's standard for securities fraud cases such as this. The Court adjourned the original hearing, permitted supplemental briefing, and rescheduled the hearing for August 29, 2001.

Defendants move for dismissal of both Count I and Count II, but Defendants' motion as to Count II depends on the outcome of the motion as to Count I. In particular, Defendants' entire argument as to Count II is as follows: "Because plaintiffs fail adequately to allege any primary violation of Section 10(b) or Rule 10b–5 by Federal–Mogul, the alleged 'controlling person,' their claims against the individual defendants for controlling person liability under Section 20(a) of the [Securities] Exchange Act also must be dismissed," citing *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 554 n. 11 (6th Cir.1999).

Therefore, in the analysis below, the Court primarily focuses on Count I.

## II LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the district courts to dismiss any claim for relief that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. In general, in applying the standards under Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

The requirement of drawing inferences in favor of the plaintiff is unaffected by the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "Reform Act"), Pub.L. No. 104–67 (codified at 15 U.S.C. § 78u–4 & –5) (1995). While Congress strengthened the pleading standard for securities fraud, as discussed in more detail below, "the Reform Act would hardly serve its purpose to protect investors and to maintain confidence in the securities markets, were it to become a choke-point for meritorious claims." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir.2001) (en banc) (quotations and citations omitted).

■ The Court will not, however, accord the presumption of truthfulness to any. legal conclusion, opinion or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The Court will not dismiss a claim for relief "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*,

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996).

## III ANALYSIS

In the recent opinion in *Helwig v. Vencor, Inc.,* 251 F.3d 540 (6th Cir.2001) (en banc), the Sixth Circuit restated the elements of a claim under Section 10(b)(5) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder as follows: "To prevail on a § 10(b)(5)/Rule 10b–5 claim, a plaintiff must establish (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury." *Id.* at 554 (citing *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1409 (6th Cir. 1991)).

### 1. Misrepresentation

Defendants assert that Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted because Plaintiffs' Amended Complaint does not satisfy the heightened pleading requirements in securities fraud cases. Pursuant to those requirements, Plaintiffs must

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed.

15 U.S.C. § 78u–4(b)(1). The Court must dismiss the Amended Complaint if Plaintiffs have not satisfied these pleading requirements. *See* 15 U.S.C. § 78u–4(b)(3)(A).

Although Defendants' alleged statements are numerous, Plaintiffs indeed listed the particular misrepresentations and omissions that Defendants are alleged to have made (Am.Compl.¶¶ 36–77), and the reasons why Plaintiffs believe these statements were misleading (*see id.* ¶¶ 39, 43, 49, 55, 62, 69, 77). Plaintiffs also appear to have stated with particularity the facts on which they based their beliefs that Defendants' representations were false. (*See id.*) Therefore, the Court rejects Defendants' arguments on this first element and concludes that Plaintiffs have satisfied the heightened pleading standard for alleging misrepresentations and omissions.

### 2. Materiality

In the Amended Complaint, Plaintiffs appear to have asserted that the alleged misrepresentations and omissions (*see* Am. Compl. ¶¶ 36–77) were of material facts (Am.Compl.¶ 96). For the most part the alleged misrepresentations consist of statements that Defendant Federal–Mogul is proceeding with its plans of acquiring complementary companies and extracting synergies, that such strategy continues as planned, and that such plans remain on track or on target.

Defendants assert that the substance of the alleged misrepresentations lacks the sort of quantification necessary to show materiality. *See Ronconi v. Larkin,* 253 F.3d 423, 431, 433 (9th Cir.2001). In particular, Defendants argue that the statements amount to no more than "puffery." The Sixth Circuit has upheld the finding that "vague, optimistic statements" are not material. *See In re Royal Appliance Securities Litigation,* No. 94–3284, 1995 WL 490131, at *3 (6th Cir. Aug.15, 1995).

> Allegations that a company engaged in general puffery is [sic] insufficient to claim securities fraud. *Raab v. General Physics Corp.,* 4 F.3d 286, 289 (4th Cir.

1993). " 'Soft,' 'puffing' statements . . . generally lack materiality because the market price of the share is not inflated by vague statements predicting growth. The whole discussion of growth is plainly by way of loose prediction. . . . No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market." *Id.* at 289–90 (citations omitted). The bulk of defendants' alleged misrepresentations, such as "Royal [is] on track to have a terrific year," were properly dismissed as puffery.

*Id.*

■ Statements such as "[w]e continue to demonstrate the viability of our growth strategy . . .," "[w]e continue to enhance our position as a leader in the automotive industry . . .," and "the Company is on target to achieve projected 'synergies' and cost savings" are the sort of "vague statements predicting growth" that were dismissed as puffery in *In re Royal Appliance. See also Lasker v. New York State Elec. & Gas Corp.,* 85 F.3d 55, 58–59 (2d Cir.1996) (reasoning that the statement that "business strategies [would] lead to continued prosperity" were puffery). Therefore, this Court concludes that Defendants' statements are mere puffery.

### 3. Scienter

One way in which the PSLRA insulates defendants from abusive suits is by imposing a heightened pleading standard as to the required state of mind. Prior to the PSLRA, a plaintiff had to allege fraud "with particularity" pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Helwig,* 251 F.3d at 548. Under the PSLRA, a plaintiff must now "state with particularity facts giving rise to a *strong inference* that the defendant .acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). The

Court must dismiss the Amended Complaint if Plaintiffs have not satisfied this pleading requirement. *See* 15 U.S.C. § 78u–4(b)(3)(A).

This heightened pleading requirement for scienter strengthens the pre-PSLRA standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which gave the plaintiff "the benefit of all reasonable inferences," *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994) (emphasis added), and contemplated dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998). In *Helwig,* the Sixth Circuit quoted with approval the following standard adopted by the First Circuit in *Greebel v. FTP Software, Inc.,* 194 F.3d 185 (1st Cir.1999):

> Congress has effectively mandated a special standard for measuring whether allegations of scienter survive a motion to dismiss. While under Rule 12(b)(6) all inferences must be drawn in plaintiffs' favor, inferences of scienter do not survive if they are merely reasonable, as is true when pleadings for other causes of action are tested by motion to dismiss under Rule 12(b)(6). Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and "strong" inferences.

*Id.* at 195–96; *see Helwig,* 251 F.3d at 551. Under the "strong inference" requirement, "plaintiffs are entitled only to the most plausible of competing inferences," *Helwig,* 251 F.3d at 553, and the Court must indulge Plaintiffs' inferences of fraud if "those inferences leave little room for doubt as to misconduct," *id.* at 543.

■ Here Defendants argue that the Court should dismiss Count I of the Amended Complaint because many of Plaintiffs' allegations as to scienter merely are conclusory and do not give rise to a

strong inference that Defendants acted knowingly or recklessly. Anecdotal evidence of particular problems at particular plants does not create a strong inference that Defendants' general, global statements about the progress of plans were knowing or reckless misrepresentations. At oral argument, counsel for Defendant Ryan used the following analogy: If during World War II, General George C. Marshall had reported that the Allied offensive was going well, but a private at the front reported that the war looked pretty bad to him, there would not be a strong inference from the private's comments that General Marshall was lying about the overall success of the military strategy.

In response, Plaintiffs seem to merely repeat accusation of wrongdoing by Defendants without providing the required strong inferences of scienter. Plaintiffs' response is as follows: (a) *"[f]irst,* the deliberate nature of acts here at issue make clear that defendants acted knowingly,"* (b) *"[s]econd,* defendants made statements that were flatly contradicted by adverse facts set forth in the Complaint,"* (c) *"[t]hird,* the alleged misstatements and omissions ... concerned [Federal–Mogul's] core operations and products,"* (d) *"[f]ourth,* the Complaint alleges that defendants Snell and Ryan were active in Federal–Mogul's day-to-day-operations, had access to material information, and had control over and approved [Federal–Mogul's] false and misleading public statements,"* (e) *"[f]ifth,* the Complaint alleges that defendants were making unqualified positive statements about Federal–Mogul, up until just a short time before the truth was revealed,"* and (f) *"[s]ixth,* although plaintiffs are not required to plead defendants' motive,"* such allegations may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct.

Plaintiffs' responses may raise a reasonable inference that Defendants acted knowingly or recklessly, but they do not raise a strong inference. Pursuant to the strong inference pleading standard, Plaintiffs are entitled to only the best explanation of rival conclusions. The conclusion reached by Plaintiffs is that Defendants knowingly or recklessly misstated material facts about the health of Defendant Federal–Mogul after certain acquisitions. Some of the conclusions that rival Plaintiffs' favored conclusion are contained within the Amended Complaint as well, such as declining North American sales and significant weakening of European currencies. (*See* Am.Compl. ¶¶ 78–81.) These rival conclusions are supported by the sort of specific facts that are missing as support for Plaintiffs' explanation. In these circumstances, the best explanation is that offered by Defendants rather than that offered by Plaintiffs.

■ Even if Defendants made incorrect positive statements about Federal–Mogul's core operations while they were in charge of the day-to-day operations, the best explanation of any inaccuracy is not that they knowingly or recklessly misstated the truth. "Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi,* 253 F.3d at 432. This Court concludes that, in response to Defendants' motion to dismiss, Plaintiffs have not pointed to allegations in the Amended Complaint that raise a strong inference that Defendants acted knowingly or recklessly as to the alleged misrepresentations or omissions. Therefore, even if this Court had not concluded that Defendants' statements were mere puffery, the Court would accept Defendants' argument as to scienter and grant the motion to dismiss.

## 4. Safe harbor

Defendants also move for dismissal based on the statutory "safe harbor" for "forward-looking statements." (*See* Defs. Br. at 18–22.) Another way in which the PSLRA insulates defendants from abusive suits is this so-called "safe harbor." *See* 15 U.S.C. § 78u–5(c)(1). "Based on the judicial 'bespeaks caution' doctrine, this provision excuses liability for defendants' projections, statements of plans and objectives, and estimates of future economic performance." *Helwig*, 251 F.3d at 547–48; *see* 15 U.S.C. § 78u–5(i)(1).

Defendants claim that, "[t]he crux of the Amended Complaint is that the defendants misrepresented the prospects for success of the growth-by-acquisition strategy implemented in 1998, and the projected synergies (cost savings) to be achieved by integrating the operations of the acquired companies." (Defs.Br. at 18.) In general, the alleged misrepresentations and omissions (*see* Am.Compl. ¶¶ 36–77), speak of projections, statements of plans and objectives, and estimates of future economic performance, all of which are protected under the safe harbor provision.

Plaintiffs respond that because many of these statements are couched in the present tense, they are not literally "forward-looking." This argument, however, was rejected in *Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir.1999), where the Eleventh Circuit held that, "[t]he plaintiff's purely grammatical argument to the contrary—that a present-tense statement cannot predict the future—is unpersuasive; a statement about the state of a company whose truth or falsity is discernible only after it is made necessarily refers only to future performance." *Id.* at 804–05. Similarly, claims to the effect that "the consolidation ... continues as planned" or that "management is proceeding with their ... integration", while in the present tense, are inherently forward-looking.

■ The Court concludes that even if the alleged misrepresentations were not puffery, and even if Plaintiffs had demonstrated the requisite scienter, this Court would conclude that the alleged misrepresentations are "forward-looking." Even if this Court were to conclude that Defendants' statements qualify as "forward-looking," however, then Defendants still may be held liable if: (a) "the statements were material," (b) "defendants had actual knowledge that the statements were false or misleading," and (c) "the statements were not identified as 'forward-looking' or lacked meaningful cautionary language." *Helwig*, 251 F.3d at 554–55 (citing 15 U.S.C. § 78u–5(c)(1)). This Court already has concluded that the alleged misrepresentations are not material because they are puffery and that Plaintiffs have not satisfied the scienter pleading requirement. Therefore, the Court concludes that Plaintiffs cannot avail themselves of the exception to the safe harbor provision.

## IV CONCLUSION

For reasons set forth above, the Court grants Defendants' motion as to Count I. Because any of the three grounds discussed above—materiality, scienter, the safe harbor—is sufficient for granting Defendants' motion, the Court need not reach the questions of whether Plaintiffs adequately alleged that they justifiably relied on Defendants' misrepresentations and whether Plaintiffs adequately alleged that their justifiable reliance proximately caused them injury.

Because Count II depends on the outcome of the motion as to Count I, the Court grants Defendants' motion as to Count II, *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 554 n. 11 (6th

Cir.1999), and dismiss Plaintiffs' civil action.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [docket entry 25] is **GRANTED.**

**SO ORDERED.**